## THE CAMDEN, ELLISBURGH, AND MARLTON TURNPIKE COMPANY v. ABEL FOWLER.

1. Passing a turnpike gate, after permission to pass without payment of tolls had been refused, without the consent and against the will of the keeper, is a *forcible passing* within the meaning of the statute.

2. A person owning and cultivating two or more farms, and passing from one to another with teams engaged in his ordinary agricultural pursuits, is within that provision of the act of incorporation which exempts from toll " any person passing to or from his common business on his farm."

This case was tried upon an issue out of this court before Justice Elmer, at the April term of the Camden circuit, 1852. It was brought to recover of the defendant a penalty of $20, for forcibly passing one of the toll-gates of the company without paying toll, and for tolls due and owing from the defendant by passing through without paying tolls. (*Pro ut* the pleadings.)

Upon the trial the plaintiffs gave in evidence the charter of their company, approved February 28, 1845. *Pamph. L.* 194, § 14 and 17.

And also proved, by Moses King, that the road had been constructed previously to March, 1851, and that, from that period up to the time of the trial, he had been the keeper of the easterly gate upon the road between Ellisburgh and Marlton, which gate was called No. 2. That previously to the 17th of May, 1851, the defendant had been in the habit of passing without paying toll ; that on that day he came to the gate in a heavy farm wagon drawn by two mules. I demanded toll ; he refused to pay ; said he was going to his farm, which was about two hundred yards easterly beyond the gate. I told him that my orders were to prevent him from passing, unless he paid the toll. He claimed a right to go free of toll, and said I was liable to a penalty of $20 for stopping him. I still refused, and he then fastened his horses at the side of the road, and went off. After an absence of two or three hours, he returned in company with a man in a coal wagon, and as the coal wagon passed through the defendant followed imme-

diately after with his wagon, without my permission and without paying his toll. The gate being opened for the coal wagon, gave defendant an opportunity of passing immediately after, before I could close the gate. He went to his farm, and after remaining some time he returned without paying toll; I did not then stop him. I stopped him on his way to his farm to collect his toll; the company had ordered me to do so, and to apprise him of that; I sent him word the evening before of my orders, which word he told me he had received. Previously to that time, I would ask him for his toll in passing; he would give me some short answer, that he was going to his upper place, and pass on without paying. Under the directions of the company, I noted the number of times of his passing between the 25th March, 1851, and the 17th of May following; his toll amounted to one dollar. Subsequently to 17th of May, he has paid toll and taken receipt; before that he passed in the way I have stated without paying toll; and on that day, after I had stopped him, it became necessary for me to open the gate for the coal wagon, and then defendant fell in immediately behind and went through. The defendant resides upon another farm, about one and three-quarter miles westerly of the gate. Samuel Sharp lived on his, defendant's, upper place; but I do not know what portion he farmed, nor how many acres in farm. The farms are not connected; several farms between owned by other persons.

The plaintiffs here rested.

The counsel of the defendant opened, that the defendant denied having *forcibly* passed the gate, and that owning two farms, one above and the other below the gate, he claimed a right to pass free, in going from one farm to another, under the proviso in the 14th section of the company's charter.

The defendant called, as a witness, Samuel Sharp, who testified that he knew both of the defendant's farms; that the one on which the defendant resided was about one and three-quarter miles below the gate, and he had owned it some twenty-five or thirty years; that the other farm was about one hundred and fifty or two hundred yards above the gate, and he had owned it some six or seven years. In that time he, the

defendant, had cleared and improved a considerable portion of the upper place; that he, the witness, rented and occupied the house on this farm, but the defendant cultivated the land; that during the past year he had hauled from it, to the lower place, the corn and fire-wood, and had hauled hay from the lower place to the upper one.

And upon cross-examination the witness said, that the house in which he lives was built for a tavern, and he kept it as a place of entertainment. The hay which defendant hauled up was put in the stables for the stage-horses, which are kept there. The produce of the upper place is principally fed to defendant's stock on it; the potatoes are taken to market by me for defendant; Joseph Evans owns the farm where the gate stands.

The defendant here rested.

The court, without the case being summed up to the jury, charged them that, by the proviso of the 14th section of the plaintiff's charter, the defendant was exempted from paying toll in passing from one farm to the other, and that the verdict should be for defendant; and the jury, under the direction of the court, found their verdict for defendant without leaving the box.

Upon coming in of *postea*, a rule to show cause was allowed, upon which rule the argument now comes up.

Argued before the CHIEF JUSTICE and Justices OGDEN and HAINES.

Mr. *Browning*, in support of rule, Mr. *Vroom*, contra.

Mr. *Browning*, for plaintiff, in support of rule, contended that the provision in the statute for exemption from tolls was a privilege; it relieved the farmer from an imposition that was right, and for which he received an equivalent in the use of the road. It should not, therefore, be extended beyond the words of the exemption. The words were "in passing to and from his common business *on his farm.*" He cited 3 *Pick.* 341, *Nichols* v. *Barton*; 2 *Caines'* C. 97, *Columbia Turnpike Co.* v. *Woodward*; 6 *N. Hamp.* 499, *The Proprietors* v.

*Taylor;* 7 *Johns. R.* 184, *Hearsey* v. *Boyd;* 9 *Johns. R.* 356, *Stalton* v. *Herrick;* 2 *Pick.* 538, *Medford Turnpike* v. *Torrey;* 4 *Pick.* 388, *Kent* v. *Newburyport Turnpike;* 2 *Vermont* 512, *Green Mountain Turnpike Co.* v. *Hemingway;* 6 *T. R.* 706, *Harrison* v. *Brough;* 2 *Barn. & Ald.* 49, *Ib.* 206.

Mr. *Vroom,* against the rule, contended that the exemption freed the farmer from toll whenever he was engaged in his farming business, whether upon the farm on which he resided or not, or whether on more farms than one. Any other construction would make the exemption nearly worthless, as no toll could be charged to any one for less than half a mile. In support of this construction, he cited 10 *Johns.* 468; 17 *Johns.* 33, *Cohecton Turnpike Co.* v. *Belknap;* 8 *Johns.* 150, *Chestney* v. *Coon.*

Opinion of court by

CHIEF JUSTICE. The evidence in the case establishes a *forcible passing* of the turnpike gate, within the meaning of the 17th section of the act of incorporation. *Act 28th February,* 1849, *Pamph.* 194. The gate was passed by the defendant, after he had been refused permission to pass without payment of toll, without the consent and against the will of the keeper. It is not necessary, to bring the case within the provision of the statute, that the defendant should have been resisted by force, or that violence should have been offered. *Nichols* v. *Bertram,* 3 *Pick.* 343; *The Proprietors, &c.,* v. *Taylor,* 6 *N. Hamp.* 499.

The material question is, whether the defendant, under the facts presented by the case, is liable for tolls, or whether he comes within the provision of the 14th section of the act, which exempts from tolls "any person passing to or from his common business on his farm." The design of the legislature was, doubtless, to relieve from tolls those engaged in the ordinary pursuits of agriculture. Whether the individual lives upon his farm or off of it; whether he cultivates one farm, or more than one, he is equally within the exemption. To limit the exemption, according to its strict literal terms, to the

individual cultivating one farm or piece of land would defeat the manifest intent of the legislature. The case falls directly within the authority of *The Newbury and Cochecton Turnpike Co.* v. *Belknap,* 17 *J. R.* 33. The language of the statute in both cases is the same.

The principle to be deduced from the numerous cases cited by the plaintiff's counsel is, that a reasonable interpretation must be given to the act; that the exemption is not to be enlarged beyond the fair import and spirit of the enactment to the prejudice of the owners of the franchise, nor, on the other hand, restricted by a literal interpretation within narrower limits than is required by the obvious intent and reason of the act. *Hearsey* v. *Pruyn,* 7 *J. R.* 179 ; *Hearsey* v. *Boyd,* 7 *J. R.* 183 ; *Chestney* v. *Coon,* 8 *J. R.* 150 ; *Stratton* v. *Herrick,* 9 *J. R.* 356 ; *Stratton* v. *Hubbell,* 9 *J. R.* 357 ; *Wooster* v. *Vanvechten,* 10 *J. R.* 478 ; *Medford Turnpike Co.* v. *Torrey,* 2 *Pick.* 538 ; *Kent* v. *The Newburyport Turnpike Co.,* 4 *Pick.* 388.

In *Harrison* v. *Brough,* 6 *T. R.* 706, notwithstanding the apparently strict literal construction of the act, Lord Kenyon held that the plaintiff was neither within the words nor the *spirit* of the exemption. The same principle was adopted in *Chambers* v. *Evans,* 2 *Camp.* 393.

The ruling of the judge at the circuit was correct. The rule to show cause must be discharged.

Justices OGDEN and HAINES concurred.

Rule discharged.